No. 14-20358
_____

**UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**
_____

HUMANA HEALTH PLAN, INC,
*Plaintiff-Appellee*,

v.

PATRICK NGUYEN,
*Defendant-Appellant*.
_____

On Appeal from the United States District Court
for the Southern District of Texas, Houston Division
Civ. No. 4:13-cv-1793
_____

**BRIEF OF APPELLANT**
_____

Peter K. Stris
Dana Berkowitz
Victor O'Connell
STRIS & MAHER LLP
19210 S. Vermont Ave., Bldg. E
Gardena, CA 90248
Tel: (424) 212-7090
Fax: (424) 212-7001

*Counsel for Defendant-Appellant*

## CERTIFICATE OF INTERESTED PERSONS
Humana Health Plan, Inc. v. Patrick Nguyen
No. 14-20358

In compliance with Fifth Circuit Local Rule 28.2.1, the undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

**APPELLANT-DEFENDANT**

Patrick Nguyen

**COUNSEL FOR APPELLANT-DEFENDANT**

Peter K. Stris
Dana Berkowitz
Victor O'Connell
STRIS & MAHER LLP
19210 S. Vermont. Ave., Bldg. E
Gardena, CA 90248

David H. Abney, II
LAW OFFICE OF DAVID H. ABNEY, II
622 Shelby Street
Frankfort, KY 40601

Amar B. Raval
James C. Plummer
PLUMMER LAW GROUP
4203 Montrose Blvd., Ste. 270
Houston, TX 77006

**APPELLEE-PLAINTIFF**

Humana Health Plan, Inc.

**COUNSEL FOR APPELLEE-PLAINTIFF**

Eileen Kuo
Thomas Humphrey Lawrence, III
LAWRENCE & RUSSELL PLC
5178 Wheelis Dr.
Memphis, TN 38117

**OTHER INTERESTED PERSONS**

API Enterprises, Inc.
1470 First Colony Blvd.
Sugar Land, TX 77479

/s Peter K. Stris
Peter K. Stris
*Attorney of Record for Appellant*

## STATEMENT REGARDING ORAL ARGUMENT

Defendant-Appellant Patrick Nguyen respectfully requests oral argument. This case presents important questions arising under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq* ("ERISA"). Oral argument will aid the Court in resolving the issues presented.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS............................................................i

STATEMENT REGARDING ORAL ARGUMENT.............................................. iii

TABLE OF CONTENTS ...........................................................................................iv

TABLE OF AUTHORITIES.....................................................................................vi

STATEMENT OF JURISDICTION ..........................................................................1

STATEMENT OF THE ISSUES ...............................................................................1

PRELIMINARY STATEMENT.................................................................................2

STATEMENT OF THE CASE...................................................................................4

STANDARD OF REVIEW ......................................................................................16

SUMMARY OF ARGUMENT................................................................................18

ARGUMENT ...........................................................................................................19

I.  The District Court Erred in Holding that Humana Health Has Statutory Standing under ERISA to Bring this Action Because Humana Health Is Not a Fiduciary of the Plan....................................................19

    A. It Is Well Settled that a Third-Party Administrator Is Not an ERISA Fiduciary Unless It Has Discretion in the Administration of the Plan. ...................................................................................................20

    B. The Plan Management Agreement Withholds Discretionary Authority from Humana Health so as to Immunize It from Fiduciary Liability. ........................................................................................24

    C. The District Court Misinterpreted the Miscellaneous Administrative Services Provision of the Plan Management Agreement..........................................................................................................26

D. The Plan Administrator's Interpretation of the Plan Management Agreement (which Has Never Been Challenged by Humana Health) Is Entitled to Deference. ....................................................29

II. The District Court Erred in Concluding that the API Plan Authorized Reimbursement from a Plan Participant's Underinsured Motorist Policy. ..........................................................................................................30

A. The Relevant API Plan Document Does Not Entitle the Plan to Reimbursement from a Participant's Underinsured Motorist Policy. ........................................................................................................31

B. The District Court Improperly Disregarded the Plain Terms of the API Plan and Imported Terms that Exist Only in the Summary Plan Description..........................................................................................34

CONCLUSION .......................................................................................38

CERTIFICATE OF SERVICE ................................................................39

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT- ATION, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS .................................................................................40

# TABLE OF AUTHORITIES

**CASES**                                                                    Page(s)

*Anoka Orthopaedic Assocs., P.A. v. Lechner*, 910 F.2d 514 (8th Cir. 1990) ...................................................................................................23

*Baxter v. C.A. Muer Corp.*, 941 F.2d 451 (6th Cir. 1991)........................23

*Brown v. Blue Cross & Blue Shield of Alabama, Inc.*, 898 F.2d 1556 (11th Cir. 1990) ......................................................................................17

*CIGNA Corp. v. Amara*, 131 S. Ct. 1866 (2011) ............................31, 32, 33, 36, 37

*Curcio v. John Hancock Mut. Life Ins. Co.*, 33 F.3d 226 (3d Cir. 1994) .................22

*Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73 (1995)....................33

*Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989) ...................16

*Franchise Tax Board of the State of California v. Construction Laborers Vacation Trust for Southern California*, 103 S. Ct. 2841 (1983) ...................................................................................................19

*Hansen v Continental Ins. Co.*, 940 F.2d 971 (5th Cir. 1991) ...........31, 35

*Koehler v. Aetna Health Inc.*, 683 F.3d 182 (5th Cir. 2012) .......31, 34, 35

*Kyle Rys. v. Pacific Admin. Serv. Inc.*, 990 F.2d 513 (9th Cir. 1993) ..........22, 24, 26

*Lowry v. Bankers Life & Casualty Retirement Plan*, 871 F.2d 522 (5th Cir. 1989)........................................................................................17, 18

*Maniace v. Commerce Bank*, 40 F.3d 264 (8th Cir. 1994)........................22

*McCall v. Burlington Northern/Santa Fe Co.*, 237 F.3d 506 (5th Cir. 2000) ...................................................................................................36

*Mertens v. Hewitt Assocs.*, 508 U.S. 248 (1993)........................21, 25, 27

*Pappas v. Buck Consultants, Inc.*, 923 F.2d 531 (7th Cir. 1991) .............23

*United States v. Diebold, Inc.*, 369 U.S. 654 (1962)................................................16

*Useden v. Acker*, 947 F.2d 1563 (11th Cir. 1991) ................................................22, 23

*Reich v. Lancaster*, 55 F.3d 1034 (5th Cir. 1995) ........................................22, 25, 30

*Rhorer v. Raytheon Engineers & Constructors, Inc.*, 181 F.3d 634 (5th Cir. 1999)................................................................................................36

*Sunbeam-Oster Co. Grp. Ben. Plan v. Whitehurst*, 102 F.3d 1368 (5th Cir. 1996)................................................................................................17

*Triple Tee Golf v. Nike*, 485 F.3d 253 (5th Cir. 2007)................................................16

*US Airways, Inc. v. McCutchen*, 133 S. Ct. 1537 (2013)....................................32, 36

*Wildbur v. ARCO Chemical Co.*, 974 F.2d 631 (5th Cir. 1992)........................17, 29

## STATUTES

28 U.S.C. § 1291 ................................................................................................1

28 U.S.C. § 1331 ................................................................................................1

28 U.S.C. § 1332................................................................................................1

29 U.S.C. § 1001 ............................................................................................ iii

29 U.S.C. § 1002(14)(B)................................................................................21

29 U.S.C. § 1002(21)(A)..........................................................................21, 22

29 U.S.C. § 1022(a) ........................................................................................31

29 U.S.C. § 1102..........................................................................................21, 31

29 U.S.C. § 1104(a)........................................................................................21

29 U.S.C. § 1106(a)........................................................................................21

29 U.S.C. § 1108(b)(2)....................................................................................21

29 U.S.C. § 1132(a)(3) .......................................................................................*passim*

**RULES**

29 C.F.R. § 2509.75-8 ...........................................................22, 23, 26, 27

Fed. R. Civ. P. 56(c) ................................................................................16

**OTHER AUTHORITIES**

Langbein, John H., *The Supreme Court Flunks Trusts*, 1990 SUP. CT. REV. 207 (1990) ....................................................................................17

Restatement (3d) Law of Agency (2006), ¶ 1.01 .............................................25, 28

## STATEMENT OF JURISDICTION

Plaintiff-Appellee Humana Health Plan, Inc. invoked the jurisdiction of the District Court under 28 U.S.C. § 1331 and 28 U.S.C. § 1332. The District Court entered final judgment against Defendant-Appellant Patrick Nguyen on May 2, 2014. Mr. Nguyen timely filed a notice of appeal on June 2, 2014. This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1. Did the District Court err in holding that a third-party administrator of an ERISA-governed plan is a fiduciary with standing to sue under 29 U.S.C. § 1132(a)(3) without considering its express disavowal of fiduciary status?

2. Did the District Court err in enforcing a first-dollar right of reimbursement from an ERISA-governed plan participant's underinsured motorist policy based on provisions of a summary plan description that differ materially from the corresponding provisions of the written instrument?

3. Did the District Court err in holding that the plan administrator of an ERISA-governed plan abused her discretion in determining that a third-party administrator is not a plan fiduciary, and that the plan does not have a right to reimbursement from a participant's underinsured motorist policy?

## PRELIMINARY STATEMENT

There is no conflict between the real parties in this case.  When Defendant-Appellant Patrick Nguyen was seriously injured in a car accident, the API Employee Benefit Plan ("API Plan" or "Plan"), an employee welfare plan governed by ERISA, covered his medical expenses.  Mr. Nguyen later secured funds from his own underinsured motorist policy provider.  The API Plan Administrator, API Enterprises, Inc. ("API"), and Mr. Nguyen agree that the Plan has absolutely no right to reimbursement from Mr. Nguyen's underinsured motorist policy.

This lawsuit arises from the unauthorized intervention of a third-party administrator of the API Plan, Plaintiff-Appellee Humana Health Plan, Inc. ("Humana Health").  Humana Health sued Mr. Nguyen for reimbursement under section 502(a)(3) of ERISA against the wishes of the API Plan Administrator in order to further its own financial objectives and those of its corporate relative, Humana Insurance Co. ("Humana Insurance").  In short, Humana Health created the purported conflict between Mr. Nguyen and the API Plan in this case and now seeks double recovery.

Not surprisingly, ERISA does not entitle Humana Health to relief under these circumstances.  In fact, section 502(a)(3) of ERISA does not permit Humana Health to bring suit at all.  The District Court committed a series of errors in granting summary judgment to Humana Health, including:

- holding that Humana Health is a fiduciary of the API Plan despite its lack of discretion in the administration of the API Plan;

- holding that the API Plan has a right to reimbursement from a Plan participant's underinsured motorist policy despite clear language in the relevant Plan Document to the contrary; and

- holding that the API Plan Administrator's reasonable determinations that Humana Health is not a fiduciary of the Plan and that the Plan does not have a right to reimbursement from a participant's own insurance provider constituted an abuse of discretion.

The District Court's ruling is especially puzzling for two reasons. First, Humana Health, the self-described "fiduciary" bringing this lawsuit "on behalf of the Plan," had *expressly disavowed fiduciary status*. To be clear: Humana Health agreed to provide certain administrative services to the API Plan on the specific understanding that it would *not* be a Plan fiduciary, and therefore could not be held liable for breach of the extensive fiduciary duties imposed by ERISA. The written contract between Humana Health and the API Plan Administrator unequivocally states the parties' intent that Humana Health would not be a Plan fiduciary and withholds from Humana Health the discretion that characterizes an ERISA fiduciary as a matter of law. Yet without analyzing these provisions, the District Court accepted Humana

Health's claim to be a fiduciary of the API Plan with standing to sue under section 502(a)(3).

Second, the District Court permitted Humana Health, a third party, to defeat the Plan Administrator's exercise of its discretion *in favor of Plan participants*. When it drafted the Plan, API, acting as the Plan's sponsor, reserved for the Plan a very limited reimbursement right, which the Plan Administrator later determined does not extend to recovery from a participant's own insurance policy. That determination favors Plan participants at the expense of the Plan itself. Typically, courts must defer to the reasonable interpretation of an ERISA plan administrator *despite* the fact that the administrator acts adversely to the interests of plan participants. Here, on the contrary, the API Plan Administrator acted solely in the interests of participants and at its own expense, and yet the District Court refused to defer to its interpretation.

## STATEMENT OF THE CASE

Defendant-Appellant Patrick Nguyen is a longtime employee of API and participant in the API Plan, an employee welfare plan governed by the ERISA. API is the Plan Administrator and is not a party to this litigation.[1]

In its capacity as Plan Administrator, API hired Plaintiff-Appellee Humana Health Plan, Inc. ("Humana Health") to provide certain administrative services to

---

[1] Amy Manuel is the API employee responsible for carrying out the company's duties as Plan Administrator. ROA.355.

the Plan.  *See generally* ROA.724 (Plan Management Agreement).  API separately bought individual and group stop loss coverage for the Plan from Humana Insurance Co. ("Humana Insurance").  *See* ROA.354–55 (Summary Judgment Motion).  Humana Health and Humana Insurance are corporate relatives.

**API (Plan Administrator) and Humana Health (Plan Manager).**  The Plan Management Agreement governs the relationship between API as Plan Administrator and Humana Health as Plan Manager.  Under the Plan Management Agreement, API pays Humana Health fees in exchange for administrative services.  *See* ROA.732 ¶ 9.1.  Humana Health is required to process claims and make payments, ROA.727 (Article IV), make benefits determinations, ROA.727 (Article V), and provide regular reports to API, ROA.729 (Article VI).  In addition, Humana Health must provide certain miscellaneous services, such as arranging for discounts and producing participant identification cards.  *See* ROA.732 (Article VII).  At API's request, Humana Health will also "provide standard language concerning Plan benefits to assist the Plan Administrator in the preparation of the summary description of the Plan."  ROA.729 ¶ 7.1.

Humana Health's miscellaneous obligations to API under the Plan Management Agreement include providing "'Subrogation/Recovery' services . . . for identifying and obtaining recovery of claims payments from all appropriate parties through operation of the subrogation or recovery provisions of the Plan."  ROA.730 ¶ 7.5.

Subrogation and reimbursement (or "recovery") are contractual rights that permit a plan to assert the rights of a participant against a third party (subrogation) or to claim money recovered by a participant from a third party (reimbursement). Such rights belong to the API Plan. Here, the Plan Management Agreement obligates Humana Health to facilitate API's exercise of its subrogation and reimbursement rights by investigating potential claims, presenting claims and demands for payment, notifying participants, and prosecuting legal proceedings. ROA.730 ¶ 7.5(b)(1)-(4).

API compensates Humana Health for its administrative services according to the Plan Management Agreement's Schedule of Fees. *See generally* ROA.752 (Schedule of Fees). Humana Health is entitled to receive a monthly payment for each beneficiary or participating family as well as to "30% of all amounts recovered" through its subrogation or recovery services. ROA.753 ¶ F3.1(a). API is required to pay Humana Health in a timely fashion. *See* ROA.726 ¶¶ 3.10, 3.12; ROA.732 ¶ 9.2; ROA.733 ¶ 11.2. API's other contractual obligations are generally to protect Humana Health from and indemnify it against legal liability. *See* ROA.726 ¶¶ 3.3, 3.8, 3.9, 3.11; ROA.736 ¶ 13.1.

To ensure that there is no confusion about Humana Health and API's respective rights and responsibilities under the contract, the Plan Management Agreement specifies that "[t]he Plan Manager operates within a framework of the Plan's management policies and practices authorized or established by the Plan

6

Administrator . . . ." ROA.725 ¶ 2.1. Accordingly, Humana Health as Plan Manager "does not have discretionary authority or responsibility in the administration of the Plan," ROA.725 ¶ 2.2, "is not a trustee, sponsor, or fiduciary with respect to directing the operation of the Plan or managing any assets of the Plan," ROA.725 ¶ 2.4, and "may act as an *agent* of [API] authorized to perform specific actions or conduct specified transactions *only as provided in this Agreement*," ROA.725 ¶ 2.5 (emphasis added). API, on the other hand, remains "responsible for the operation and administration of the Plan," ROA.725 ¶ 1.8, and "is ultimately responsible for interpreting the provisions of the Plan and determining questions of eligibility for Plan participation," ROA.725 ¶ 2.3. The Plan Management Agreement prohibits assignment of the parties' rights and obligations. ROA.737 ¶ 16.3.

**API (Plan Administrator) and Humana Insurance (Stop Loss Insurer).** API also buys individual and group stop loss insurance coverage for the Plan from Humana Insurance. ROA.358–59. A stop loss insurance policy takes effect after a self-insured health plan pays out a certain amount in claims. For example, in this case, API's individual stop loss policy covers all payments in excess of $65,000 for a participant in a calendar year. *See* ROA.592. In exchange for this individual coverage, API pays Humana Insurance monthly premiums of $40.57 per participant.

Under the contract between API and Humana Insurance,[2] if API's claims exceed the individual or group stop loss threshold, Humana Insurance has the right "to be reimbursed *first* from any net proceeds subsequently recovered from responsible third parties, their insurers or others who may be responsible to pay or indemnify the Covered Person." ROA.359 (emphasis added). In other words, Humana Insurance gets priority over API if any funds are recovered from third parties. The contract continues: "Any balance remaining after [Humana Insurance] has been reimbursed shall then be credited or remitted to [API]." ROA.359.

**The Terms of the Plan.** To enable Humana Health to carry out its administrative functions, API memorialized the terms of the Plan in a 369-part questionnaire called the "New Case Document." *See* ROA.583 (2009 New Case Document); ROA.653 (2011 New Case Document).[3] The New Case Document expressly contemplates that it will be the binding embodiment of the Plan's terms. For example, it requires API to provide written notice to Humana Health "of any change to the New Case Document, at least 30 days before the effective date of the change." ROA.584; ROA.654. It similarly entitles Humana Health to an additional administrative fee

---

[2] This contract as a whole is not part of the record on appeal. Humana Health, however, cited the portion of the contract quoted above in its summary judgment motion.

[3] The 2009 and 2011 versions of the New Case Document are identical in all relevant respects.

"[i]f any changes to the New Case Document require Humana to reprocess claims . . . ." ROA.584; ROA.654.

At API's request, Humana Health used the New Case Document to draft the Summary Plan Description required by ERISA.[4]  *See* ROA.584; ROA.654 ("The New Case Document will be used by Humana to draft the Summary Plan Description . . . ."). The Summary Plan Description states that it provides only "an overview of [participants'] benefits.  In the event of any discrepancy between this [Summary Plan Description] and the official Plan Document, the Plan Document shall govern." ROA.378.

There are significant discrepancies between the subrogation/reimbursement provision of the New Case Document and the corresponding description in the Summary Plan Description.  The New Case Document provides:

> Subrogation allows the Plan to "stand in the shoes of the covered person and collect money from the responsible appropriate party."  Once the Plan pays, we have a contractual/equitable right to request money back from *the responsible appropriate party or their insurance carrier*.  Reimbursement allows the Plan, by a contractual right, to recover the money the Plan paid on behalf of the covered person, when benefits are paid and *the covered person recovers monetary damages from the responsible appropriate party*.  This can be either by a settlement, judgment or other manner.

---

[4] API approved the Summary Plan Description drafted by Humana Health based on the 2009 New Case Document on May 18, 2009.  ROA.373 ¶ 3.  However, there was no Summary Plan Description for the 2011 New Case Document in effect until January 29, 2013.  ROA.373 ¶¶ 2–4.  As a result, the *only* document accurately reflecting the terms of the API Plan from the adoption of the 2011 New Case Document until January 29, 2013 was the 2011 New Case Document itself.

ROA.604; ROA.681 (emphasis added).  The New Case Document makes clear that "the responsible appropriate party" can never be "the covered person," as the covered person cannot "collect money" or "recover[] monetary damages" from himself.  Similarly, "the responsible appropriate party" cannot be the covered person's insurance carrier in light of the phrase, "the responsible appropriate party or their insurance carrier."  Taken as a whole, the provision logically gives the Plan the right to recover "monetary damages" from third-party tortfeasors only.

The Summary Plan Description, on the other hand, claims much more extensive subrogation and reimbursement rights for the Plan:

> This Plan shall be repaid the full amount of the covered expenses it pays from *any amount received from others* for the bodily injuries or losses which necessitated such covered expenses.  Without limitation, "amounts received from others" specifically includes, but is not limited to, liability insurance, worker's compensation, uninsured motorists, underinsured motorists, "no-fault" and automobile med-pay payments or recovery from any identifiable fund regardless of whether the beneficiary was made whole.

ROA.455 (emphasis added).  Unlike the New Case Document, the Summary Plan Description purports to permit the Plan to recover "any amount received from others," including the covered person's own insurance policies.

**The Dispute.**  On April 14, 2012, Mr. Nguyen was seriously injured in a car accident caused by the negligence of another driver.  Over the following year, he incurred $605,875.38 in medical expenses arising from the accident, and the Plan

paid $274,607.84.  ROA.28.[5]  Humana Insurance reimbursed the Plan $209,607.84 under its individual stop loss insurance policy because Mr. Nguyen's claims exceeded the $65,000 threshold in both 2012 and 2013.  ROA.358.[6]

Mr. Nguyen privately recovered a $255,000.00 settlement pursuant to his underinsured motorist policy.  Underinsured motorist insurance supplements the monetary damages that an injured covered person recovers from a negligent driver who has insufficient insurance.  As with all other forms of insurance, the insured pays premiums to the insurance carrier in exchange for this coverage.

After Mr. Nguyen obtained $255,000.00 from his underinsured motorist insurance provider, Humana Health demanded that Mr. Nguyen pay that entire sum to the Plan.  ROA.10 ¶ 14.  Humana Health claimed that the Summary Plan

---

[5] Mr. Nguyen underwent at least two surgeries and six months of rehabilitation as a result of the accident. According to his hospital records, Mr. Nguyen's injuries included fractures of his clavicle, shin, knee, pelvis, and spine. He also dislocated his right elbow and suffered multiple injuries to his small bowel, colon, and lungs. Mr. Nguyen experienced severe pain and suffering and is now permanently disabled and disfigured.

[6] Humana Health cites this $209,607.84 figure its summary judgment papers. *See* ROA.358. That figure appears to overstate the amount of reimbursement from Humana Insurance by $65,000, the annual individual stop loss threshold. In other words, the API Plan solely insured the first $65,000 of Mr. Nguyen's claims in *both* the 2012 and 2013 calendar years, for a total of $130,000, and Humana Insurance covered the remaining $146,607.84. We note this discrepancy for the sake of accuracy only; it has no bearing on the legal issues before this Court.

Description gave the Plan the right to first-dollar recovery of the underinsured motorist funds.  ROA.8 ¶ 11.

The Plan Administrator disagreed.  In API's view, the 2011 New Case Document (which did not have an attendant summary plan description in effect) was the governing Plan document, and it did not permit recovery from a Plan participant's own insurance policy.  ROA.581 ¶¶ 8–9.  Mindful of the fundamental unfairness of first-dollar recovery where the insured is not made whole, API had not drafted a written instrument that would give it the maximum rights permitted by law.  In enforcing the terms of the Plan, the API Plan Administrator consistently interpreted the Plan accordingly, and will be required by ERISA to maintain the same interpretation going forward.[7]

In any event, the Plan Administrator did not wish to pursue any reimbursement rights it might have under such inequitable circumstances.[8]  Accordingly, it advised

---

[7] Humana Health has alleged that the Plan Administrator is only interpreting the Plan to lack the asserted reimbursement right *in this case* because Mr. Nguyen is the son of API's CEO.  *See, e.g.*, ROA.365.  That assertion is as offensive as it is wrong.  The Plan Administrator's interpretation of the terms of the Plan—which deprives the Plan of money here—is binding on the Plan in the future.  As a result, the API Plan will never be able to recover from *any* Plan participant's own insurance policy.

[8] Because Humana Insurance is subrogated to the recovery rights of the Plan under the terms of the stop loss contract, some of the Plan's hypothetical recovery from Mr. Nguyen would go to Humana Insurance.  As explained above, however, the reimbursement right belongs to the Plan and not to Humana Insurance.

Humana Health and Mr. Nguyen that the Plan did not wish to pursue a subrogation or reimbursement claim against Mr. Nguyen's underinsured motorist funds. ROA.257 ¶ 9; ROA.582 ¶ 10.

Humana Health nevertheless brought the instant lawsuit against Mr. Nguyen and his attorneys "on behalf of the Plan."[9]   ROA.10 ¶ 14.   Humana Health asserted standing under 29 U.S.C. § 1132(a)(3), which in relevant part authorizes suit "by a participant, beneficiary, *or fiduciary* . . . to obtain other appropriate equitable relief . . . to enforce . . . *the terms of the plan*."   *See* ROA.7 ¶ 2 ("Humana is the Plan Manager and a fiduciary of the Plan . . . ."); ROA.7 at ¶ 1 ("This action is to enforce the terms of the API Employee Benefits Plan . . . .").   Mr. Nguyen answered the complaint, disputing Humana Health's standing to bring suit, see ROA.251 ¶ 2; ROA.253 ¶ 31, and asserting in the alternative that Human Health breached its fiduciary duty, ROA.253 ¶ 35; ROA.256.   Mr. Nguyen also disputed Humana Health's characterization of the Summary Plan Description as the terms of the Plan. ROA.253 ¶ 34.   Humana Health unsuccessfully moved to dismiss Mr. Nguyen's counterclaim.

---

[9] Humana Health simultaneously moved for a temporary restraining order and a preliminary injunction to prevent Mr. Nguyen or his lawyers from dissipating the underinsured motorist settlement. *See* ROA.45.   Out of an abundance of caution, Mr. Nguyen's attorneys deposited the underinsured motorist settlement into the court registry, ROA.257 ¶ 12, and were dismissed from the action, ROA.248; ROA.250.

After the District Court set a discovery schedule, but before the parties conducted any meaningful discovery, Humana Health moved for summary judgment.  Humana Health relied on the declaration of Humana Insurance employee Brian Bargender,[10] which claims that the Summary Plan Description is the governing document for the Plan and that "Humana [Health] is handling subrogation and reimbursement on behalf of the Plan . . . ."  ROA.378 ¶ 2; ROA.374 ¶ 8.  Mr. Nguyen opposed Humana Health's motion and cross-moved for summary judgment on the standing issue.  ROA.567.[11]  In support, Mr. Nguyen produced the affidavit of Amy Manuel, the API employee responsible for administering the Plan, reiterating API's position that the New Case Document governs the Plan and that it does not permit recovery from a participant's own insurance policy.  ROA.581 ¶¶ 8–9.  Ms. Manuel also affirmed that API has the ultimate authority to decide whether to pursue a claim for subrogation or reimbursement.  ROA.580 ¶ 6; ROA.581 ¶ 7.

---

[10] The *only* evidence that Humana Health has introduced in this matter are two declarations from an an employee of Humana Insurance.  ROA.373; ROA.778.

[11] Mr. Nguyen also objected to Humana Health's attempt to unfairly prejudice the proceedings by introducing irrelevant and inflammatory evidence of his relationship with the CEO of API and the history of settlement negotiations between the parties. *See* ROA.576 ¶ 25.  In the event that the District Court denied his cross-motion for summary judgment, he also requested a continuation to allow him to take discovery pursuant to the court's discovery schedule.  ROA.576 ¶ 26.

**The District Court's Decision.** The District Court granted summary judgment to Humana Health. ROA.943. Citing the miscellaneous administrative services provision of the Plan Management Agreement, the District Court concluded as a matter of law that Humana Health was authorized to "'exercise discretionary control or authority over the plan's management, administration, or assets' so as to characterize it as a fiduciary permitting it to sue under § 1132(a)(3)." ROA.953–54. The District Court further interpreted the same provision of the Plan Management Agreement to grant Humana discretionary authority to pursue this action despite API's instructions to the contrary because, according to the Agreement, Humana Health is "responsible for '[f]iling and prosecution of legal proceedings against any appropriate party . . . .'" ROA.955–56. According to the District Court, Ms. Manuel's competing interpretation constituted an abuse of discretion. ROA.956.

The District Court next determined that the subrogation/reimbursement provisions of the Plan created an equitable lien in favor of the Plan against Mr. Nguyen's underinsured motorist policy funds. ROA.962. The District Court reasoned that the term "responsible appropriate party" in the 2009 and 2011 New Case Documents "unambiguously includes a Plan participant's own insurers," and Ms. Manuel had again abused her discretion in deciding otherwise. ROA.963. The court held in the alternative that the term should be given a meaning as close as possible to the explanation in the Summary Plan Description. ROA.964.

15

Finally, the District Court denied Mr. Nguyen summary judgment on his counterclaim for breach of fiduciary duty and granted summary judgment to Humana Health based on its previous conclusion that Humana Health's claim was meritorious. ROA.971.[12]

## STANDARD OF REVIEW

This Court reviews a grant of summary judgment *de novo*, applying the same standards as the District Court. *Triple Tee Golf v. Nike*, 485 F.3d 253, 261 (5th Cir. 2007). Summary judgment is appropriate only if the moving party can show "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court views all evidence in the light most favorable to the non-moving party—Mr. Nguyen. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

Mr. Nguyen urged the District Court to accept the interpretation of the API Plan Administrator. In *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989), the Supreme Court held that when a benefit plan gives an administrator discretionary authority to construe the terms of the plan, the administrator's interpretations are entitled to deference. *Id.* at 111, 115. As the District Court acknowledged below,

---

[12] The District Court also denied Mr. Nguyen's request for a continuance to conduct discovery. ROA.971–72. And it overruled Mr. Nguyen's objections to Humana Health's evidence as moot because the it did not rely on any of the statements to which Mr. Nguyen objected in reaching its conclusions. ROA.965.

"there is no dispute that the Plan Administrator was vested with discretionary authority to interpret the Plan." ROA.948. *See also* ROA.725 ¶ 2.3 (provision of Plan Management Agreement stating that "The Plan Administrator . . . is ultimately responsible for interpreting the provisions of the Plan and determining questions of eligibility for Plan participation.").

Under these circumstances, "the decision of the administrator must stand unless there is an abuse of discretion." *Sunbeam-Oster Co. Grp. Ben. Plan v. Whitehurst*, 102 F.3d 1368, 1373 (5th Cir. 1996). *See also Lowry v. Bankers Life & Casualty Retirement Plan*, 871 F.2d 522, 525 (5th Cir. 1989). The abuse of discretion standard requires a reviewing court to uphold even a legally incorrect interpretation of the plan absent extraordinary circumstances. *See Wildbur v. ARCO Chemical Co.*, 974 F.2d 631, 637 (5th Cir. 1992). Only when a plan administrator adopts a plainly wrong interpretation of the plan that advances its own interests *at the expense of beneficiaries* is a court apt to intervene. *See id.* at 638 (quoting *Brown v. Blue Cross & Blue Shield of Alabama, Inc.*, 898 F.2d 1556, 1566–67 (11th Cir. 1990) (incorrect interpretation fails "if it advances the conflicting interest of the fiduciary at the expense of the affected beneficiary or beneficiaries").[13]

---

[13] The abuse of discretion standard is so lax that some commentators feared after *Bruch* that the courts lacked adequate authority to police such conflicts of interest. *See, e.g.*, Langbein, John H., *The Supreme Court Flunks Trusts*, 1990 SUP. CT. REV. 207, 223 (1990) (Supreme Court undermined ERISA's protections for plan

The API Plan Administrator's interpretations of the terms of the Plan are entitled to the greatest possible deference.  Because the Plan Administrator has adopted interpretations that favor the interests of *beneficiaries* at the expense of the Plan sponsor, the protective concerns that motivate scrutiny even under the lax abuse of discretion standard are absent.  *See Lowry*, 871 F.2d at 525 n.6.  Indeed, counsel for Mr. Nguyen is not aware of any court (besides the District Court in this case) that has intervened to upset an interpretation of an ERISA plan that is favorable to its beneficiaries advanced by an administrator vested with interpretive authority.

## SUMMARY OF ARGUMENT

Humana Health asserts only one claim "to enforce the terms of the API Employee Benefits Plan ('Plan'), and for equitable relief" under ERISA.  ROA.7 ¶¶ 6, 19.  It brings this action under section 502(a)(3) of ERISA, ROA.7 ¶ 2, which authorizes suit "by a participant, beneficiary, or fiduciary to enjoin any act or practice . . . or to obtain other equitable relief to redress such violations or to enforce any provisions of this subchapter or the terms of the plan."  29 U.S.C. § 1132(a)(3).

The District Court erred in granting summary judgment to Humana Health on its section 502(a)(3) claim for two independent reasons.  First, Humana Health is not a

---

participants by "permit[ting] plan drafters to reinstitute the arbitrary-and-capricious standard by means of boilerplate grants of discretion.").

"participant, beneficiary or fiduciary" of the API Plan and therefore lacks standing to sue under the statute.  The Plan Management Agreement makes unmistakably clear that Humana Health does not want or have the discretionary authority of an ERISA fiduciary.  Second, Humana Health does not seek to "enforce any provisions of this subchapter or the terms of the plan" because there is no term of the API Plan that entitles it to reimbursement from a Plan participant's underinsured motorist policy.  And even if the Plan could be interpreted to contain such a harsh reimbursement provision, the API Plan Administrator's decision that it does not would be entitled to deference.

## ARGUMENT

**I. The District Court Erred in Holding that Humana Health Has Statutory Standing under ERISA to Bring this Action Because Humana Health Is Not a Fiduciary of the Plan.**

Only "a participant, beneficiary, or fiduciary" of a plan may bring suit under section 502(a)(3) of ERISA.  29 U.S.C. § 1132(a)(3).  *See also Franchise Tax Board of the State of California v. Construction Laborers Vacation Trust for Southern California*, 103 S. Ct. 2841, 2852 (1983). ("The express grant of federal jurisdiction in ERISA is limited to suits brought by certain parties as to whom Congress presumably determined that a right to enter federal court was necessary to further the statute's purpose.").

Humana Health is plainly not a participant or beneficiary of the API Plan. Purporting to act as a fiduciary, see ROA.7 ¶ 2, Humana Health alleges that Mr. Nguyen owes the Plan money under a reimbursement provision that Humana Health claims is in the Plan.  ROA.10 ¶ 14; ROA.14 ¶¶ 20–21.  According to Humana Health, the Plan has a right to reimbursement from a participant's underinsured motorist policy.  The API Plan Administrator (an ERISA fiduciary vested with authority to interpret the terms of the Plan), however, has expressly rejected Humana Health's interpretation.  *See* ROA.581 ¶ 9.

Humana Health presses these allegations despite the API Plan Administrator's contrary interpretation and decision not to litigate, see ROA.581 ¶ 10, because Humana Health has its own financial interest in the lawsuit.  A portion of any money that Humana Health recovers from Mr. Nguyen "on behalf of the Plan" would go to another Humana entity, Humana Insurance.   *See* ROA.358–359 (explaining subrogation and reimbursement provision of stop loss insurance policy).  But to be clear: Humana Health's separate financial stake in the outcome of this litigation does not confer standing under section 502(a)(3) of ERISA to enforce the Plan's purported reimbursement rights.

**A. It Is Well Settled that a Third-Party Administrator Is Not an ERISA Fiduciary Unless It Has Discretion in the Administration of the Plan.**

Third-party administrators and other professionals who provide services to ERISA plans typically disclaim fiduciary status to avoid liability for breach of

fiduciary duty. That is because ERISA imposes extensive duties on plan fiduciaries and holds them personally liable for breach. *See Mertens v. Hewitt Assocs.*, 508 U.S. 248, 251–52 (1993); 29 U.S.C. § 1104(a) (making fiduciaries personally liable for damages and restitution). To the extent that a person acts as an ERISA fiduciary, he is held to stringent duties of prudence and loyalty. *See, e.g.*, *Mertens*, 508 U.S. at 251. Nonfiduciaries who merely provide services to a plan have lesser duties. *Mertens*, 508 U.S. at 254 n.4; *see generally* 29 U.S.C. § 1002(14)(B) (characterizing service provider as "party in interest"); 29 U.S.C. § 1106(a) (prohibiting certain transactions by party in interest); 29 U.S.C. § 1108(b)(2) (limiting parties in interest to reasonable compensation).

There are four ways to become a fiduciary under ERISA, and only two are relevant here.[14] A fiduciary either takes action with regard to plan assets, see 29 U.S.C. § 1002(21)(A)(i) ("a person is a fiduciary with respect to the plan to the extent [that] he exercises any authority or control respecting management or disposition of its assets. . . "), or exercises discretion in managing a plan or has discretion in the

---

[14] The other two ways are to be named as a fiduciary in the ERISA plan, see 29 U.S.C. § 1102(a) ("Named fiduciaries"), or to be a paid investment advisor, see 29 U.S.C. § 1102(21)(A)(ii) ("[A] person is a fiduciary with respect to a plan to the extent [that] he renders investment advice for a fee . . . ."). Humana Health was not named as a fiduciary in the API Plan. *Cf.* ROA.653 (2009 and 2011 New Case Documents). Nor is it a paid investment advisor, as it does not "render[] investment advice" to the API Plan, which does not invest employee assets at all.

administration of a plan, see *id*. § 1002(21)(A)(i) ("a person is a fiduciary with respect to a plan to the extent [that] he exercises any discretionary authority or discretionary control respecting management of such plan"); *id*. § 1002(21)(A)(iii) ("a person is a fiduciary with respect to a plan to the extent [that] he has any discretionary authority or discretionary responsibility in the administration of such plan. . . .").

Here, as in most cases, the existence of fiduciary status turns on whether the person at issue had or exercised discretion. *See* 29 C.F.R. § 2509.75-8; *Reich*, 55 U.S. at 1049 (fiduciaries must "exercise discretionary authority and control that amounts to actual decision making power"); *Maniace v. Commerce Bank*, 40 F.3d 264, 267 (8th Cir. 1994) ("Clearly, discretion is the benchmark of fiduciary status under ERISA."); *Curcio v. John Hancock Mut. Life Ins. Co.*, 33 F.3d 226, 233 (3d Cir. 1994) ("The linchpin of fiduciary status under ERISA is discretion."). Even an entity that assumes some discretionary control or authority over plan assets is not a fiduciary "if that discretion is sufficiently limited by a pre-existing framework of policies, practices, and procedures." *Useden v. Acker*, 947 F.2d 1563, 1575 (11th Cir. 1991) (cited in *Reich v. Lancaster*, 55 F.3d 1034, 1047 (5th Cir. 1995)).

Put simply, third-party service administrators and other professionals will not qualify as ERISA fiduciaries when they lack discretionary authority. *See, e.g.*, *Kyle Rys. v. Pacific Admin. Serv. Inc.*, 990 F.2d 513, 516 (9th Cir. 1993) (third-party

administrator who processed claims not a fiduciary); *Baxter v. C.A. Muer Corp.*, 941 F.2d 451, 455 (6th Cir. 1991) (plan administrator who processed and paid claims in accordance with terms of plan not fiduciary); *Useden*, 947 F.2d at 1577–78 (law firm that rendered advice did not become fiduciary); *Pappas v. Buck Consultants, Inc.*, 923 F.2d 531 (7th Cir. 1991) (actuaries who invited reliance on advice did not become fiduciaries); *Anoka Orthopaedic Assocs., P.A. v. Lechner*, 910 F.2d 514, 517 (8th Cir. 1990) (attorney and accounting firm who performed ministerial tasks that did not entail discretionary authority or responsibility were not fiduciaries).

Third-party administrators in particular are deemed to lack discretion when they perform functions that the Department of Labor has described as "purely ministerial." *See* 29 C.F.R. § 2509.75-8 (listing "purely ministerial functions" whose performance does not make an entity an ERISA fiduciary, including "[a]pplication of rules determining eligibility for participation of benefits," "[c]alculation of benefits," "[p]rocessing of claims," and "[c]ollection of contributions and application of contributions as provided in the plan"). For example, in *Kyle Railways*, the Ninth Circuit Court of Appeals held that an Administrative Services Agreement between a sponsor of a self-insured plan and a third-party administrator did not make the third-party administrator a plan fiduciary because it detailed functions that are "purely ministerial" under the Department of Labor regulations. 990 F.2d at 516. *Kyle Railways* also illustrates how the standard for fiduciary status

has been litigated in other cases: the third-party administrator claims *not* to be an ERISA fiduciary to avoid liability for breach of fiduciary duty. *See, e.g.*, *Kyle*, 990 F.2d at 517–18.

## B. The Plan Management Agreement Withholds Discretionary Authority from Humana Health so as to Immunize It from Fiduciary Liability.

In this case, Humana Health and API intended that Humana Health would not be an ERISA fiduciary with potential liability for breach of fiduciary duty. Indeed, the Plan Management Agreement explicitly states that the Plan Manager "is not a trustee, sponsor, *or fiduciary* with respect to directing the operation of the Plan or managing any assets of the Plan." ROA.725 ¶ 2.4 (emphasis added). The meaning of this language could hardly be clearer.

In other provisions of the Plan Management Agreement, Humana Health carefully disavows the discretion that characterizes an ERISA fiduciary. The first substantive provision of the contract states that "[i]n performing its obligations under this Agreement, the Plan Manager *operates within a framework of the Plan's management policies and practices* authorized or established by the Plan Administrator . . . ." ROA.725 ¶ 2.1 (emphasis added). This language invokes the Eleventh Circuit's holding in *Useden* that there is no fiduciary status where discretion is "limited by a pre-existing framework of policies, practices and procedures." 947 F.2d at 1575. The Plan Management Agreement also provides that

the Plan Manager "*does not have discretionary authority or responsibility* in the administration of the Plan." ROA.725 ¶ 2.2 (emphasis added). Here, the Agreement echoes both the text of ERISA, see 29 U.S.C. § 1002(21)(A), and the Supreme Court's interpretation of the statutory text in *Mertens*, 508 U.S. at 251–52.

The Plan Management Agreement further provides that Humana Health acts subject to API's control. Paragraph 2.5 states, "[Humana Health] may act as an *agent* of [API] authorized to perform specific actions or conduct specified transactions only as provided in this Agreement" (emphasis added). ROA.725. This provision means that Humana Health is "authorized to perform specific actions or conduct specified transactions" laid out in the contract only in its capacity "as an agent." And it is black letter law that an agent acts subject to the principal's control. *See, e.g.*, Restatement (3d) Law of Agency (2006), ¶ 1.01. Indeed, Paragraph 3.11 of the Plan Management Agreement confirms that API "directs" Humana Health in exercising its duties. *See* ROA.726 ¶ 3.11 ("The Client shall not direct the Plan Manager to act or refrain from acting in any way which would violate any applicable law or regulation."). Because Humana Health is an agent of API, and acts subject to its control, it lacks the "discretionary authority and control that amounts to actual decision making power" that the Fifth Circuit has held is necessary to fiduciary status. *Reich*, 55 U.S. at 1049.

These limiting provisions are consistent with Humana Health's limited substantive responsibilities under the Plan Management Agreement. Humana Health's obligations are precisely the types of "purely ministerial services" that the Department of Labor has explained do not confer fiduciary status upon the provider. *See* 29 C.F.R. § 2509.75-8. *See also Kyle Rwys.*, 990 F.2d at 516. For example, Humana Health determines eligibility for benefits, calculates benefits, and processes claims. *Compare* 29 C.F.R. § 2509.75-8 *with* ROA.727 (Plan Management Agreement, Article IV). As the Department of Labor has advised, the "administrative" nature of these routine activities does not give Humana Health discretionary authority over the "administration" of the Plan.

## C. The District Court Misinterpreted the Miscellaneous Administrative Services Provision of the Plan Management Agreement.

To hold that Humana Health is an ERISA fiduciary, the District Court constructed an interpretation of Article VII of the Plan Management Agreement that ignores both the language and spirit of the contract and relevant Department of Labor guidance.[15]

According to the District Court:

> Because Article VII of the PMA provides Humana express authorization to administer the terms of the Plan by *inter alia* presenting claims and demands for payment to parties determined to be liable, notifying participants such as Nguyen that subrogation rights will be exercised, and filing and prosecuting legal proceedings against any appropriate party for determination of liability

---

[15] As discussed below, Humana Health does not advocate the District Court's interpretation, and the Plan Administrator has expressly rejected it.

and collection of subrogation payments for which such party may be liable, the court concludes as a matter of law that Article VII of the PMA unambiguously authorizes Humana to "exercise discretionary control or authority over the plan's management, administration, or assets" so as to characterize it as a fiduciary permitting it to sue under § 1132(a)(3). *See Mertens*, 113 S. Ct. at 2066.

ROA.953–56. In short, the District Court reasoned that "presenting claims and demands for payment," "notifying participants," and "filing and prosecuting legal proceedings" inherently constitute sufficient "discretionary authority and control" to make Humana Health an ERISA fiduciary. *See* ROA.953–56.

To begin, the activities identified in this provision do not inherently entail the exercise of discretion; rather, they are mechanical tasks to be performed *after discretion has been exercised*. For example, while Article VII instructs Humana Health to "present[] claims and demands for payments to parties determined to be liable," it does not specify who determines which parties are liable and for how much. For this reason, demanding payment, giving notice, and filing suit—absent additional indicia of discretionary authority—are merely the types of ministerial duties that the Department of Labor has explained do not create fiduciary status. Indeed, the Department of Labor has specifically included the "[c]ollection of contributions and application of contributions as provided in the plan"—like the collection activities described in the Plan Management Agreement—in its list of "purely ministerial services" that do not make their providers fiduciaries. 29 C.F.R. § 2509.75-8.

27

Moreover, the District Court's interpretation of Article VII is untenable in the context of the entire Plan Management Agreement as described above. The contract *specifically denies* Humana Health the discretionary authority that the District Court reads into the miscellaneous administrative services provision. ROA.725 ¶ 2.2 ("Plan Manager does not have discretionary authority or responsibility in the administration of the Plan."). And the Plan Management Agreement expressly limits Humana Health to the role of "agent" when "perform[ing] specific actions or conduct[ing] specified transactions . . . as provided in this Agreement." ROA.725 ¶ 2.5. In other words, when Humana Health carries out its Article VII duties, it acts subject to the direction and control of its principal API.

The plain language of the Plan Management agreement clearly does not provide Humana Health authority to enforce the API Plan's purported reimbursement rights against the express wishes of the Plan Administrator, a fiduciary expressly appointed by the plan sponsor. *See* Restatement (3d) Law of Agency (2006), ¶ 1.01. That inescapable conclusion is bolstered by the manner in which the parties actually performed the Plan Management Agreement. According to the API Plan Administrator, Humana Health "notif[ies] participants" only after API has decided to exercise its subrogation rights, ROA.580 ¶ 6, and it "fil[es] and prosecut[es] legal proceedings" only after API decides to pursue such litigation, ROA.581 ¶ 7.

Humana Health has offered no evidence of doing otherwise since the parties entered into the Plan Management Agreement five years ago.

### D. The Plan Administrator's Interpretation of the Plan Management Agreement (which Has Never Been Challenged by Humana Health) Is Entitled to Deference.

Even if there were a logical reading of the Plan Management Agreement that rendered Humana Health a fiduciary, that reading would have to yield to the Plan Administrator's reasonable alternative interpretation. API as Plan Administrator has interpreted the Plan Management Agreement not to confer fiduciary status upon Humana Health. *See* ROA.580 ¶ 4 ("As the Plan Manager, Humana does not have discretionary authority to interpret the terms of the plan or to administer the Plan in a manner that contradicts that of the Plan Administrator."). That interpretation must stand *even if it is incorrect* unless it amounts to an abuse of discretion. *See Wildbur*, 974 F.2d at 637.

Humana Health cannot make that showing. *Cf.* ROA.956. Nor has it even attempted to do so. Tellingly, Humana Health never meaningfully defends the position that it is a fiduciary of the API Plan, much less that Article VII of the Plan Management Agreement confers fiduciary status. Its entire "argument" below that it is an ERISA fiduciary (for the purposes of 29 U.S.C. § 1132(a)(3)) is a single unsupported assertion in its complaint that "Humana is the Plan Manager and a fiduciary of the Plan . . . ." ROA.7 ¶ 2. Its summary judgment motion claims only

29

that Humana Health seeks relief as the "plan" or "plan administrator" and thus "meets the *Sereboff* standard for equitable relief." *See* ROA.365–66.

To be clear: Humana Health does not have standing to sue under section 502(a)(3) of ERISA if it is not a fiduciary of the API Plan.  If Humana Health has not provided enough evidence that it is a fiduciary to create a "genuine issue of . . . fact," then Mr. Nguyen is entitled to summary judgment on Humana Health's reimbursement claim. Fed. R. Civ. P. 56(c).  At the very least, Mr. Nguyen is entitled to the opportunity to present evidence to establish that Humana Health is not a fiduciary within the meaning of ERISA.  *See, e.g.*, *Reich*, 55 U.S. at 1047–49 (describing extensive trial record on issue of fiduciary status)**.**

## II. The District Court Erred in Concluding that the API Plan Authorized Reimbursement from a Plan Participant's Underinsured Motorist Policy.

Even if Humana Health had statutory standing, it could not prevail under section 502(a)(3) of ERISA because it does not seek to enforce "the terms of the plan."  *Cf.* 29 U.S.C. § 1132(a)(3).  Instead, Humana Health seeks to enforce the terms of the Summary Plan Description.  *See, e.g.*, ROA.8 ¶ 11 ("The Summary Plan Description contains a 'Reimbursement/Subrogation' section setting forth the Plan's rights of reimbursement and subrogation . . . ."); ROA.363–64 (arguing that the Summary Plan Description contains the relevant reimbursement/subrogation provision).  But the Summary Plan Description drafted by Humana Health does not accurately summarize the subrogation and reimbursement provision of the 2009 and 2011 New

Case Documents drafted by the API Plan sponsor.  The Supreme Court has held that the terms exclusive to the Summary Plan Description are unenforceable, and the District Court erred in enforcing such terms here.

## A. The Relevant API Plan Document Does Not Entitle the Plan to Reimbursement from a Participant's Underinsured Motorist Policy.

Every employee benefit plan governed by ERISA must be "established and maintained pursuant to a written instrument" (known colloquially as a "plan document") that provides detailed procedures for plan funding, operation, administration, and amendment, and that "specif[ies] the basis on which payments are made to and from the plan." 29 U.S.C. § 1102.  In addition, plan sponsors must give participants and beneficiaries a "summary plan description . . . written in a manner calculated to be understood by the average plan participant, and [] sufficiently accurate and comprehensive to reasonably apprise [them] of their rights and obligations under the plan." 29 U.S.C. § 1022(a).  The plan document and the summary plan description have different legal significance consistent with their different purposes.  *See Koehler v. Aetna Health Inc.*, 683 F.3d 182, 189 (5th Cir. 2012) (citing *Hansen v Continental Ins. Co.*, 940 F.2d 971, 981 (5th Cir. 1991)).

In *CIGNA Corp. v. Amara*, 131 S. Ct. 1866, 1877 (2011), the Supreme Court held that the terms of a summary plan description are not "the terms of the plan" and therefore cannot be enforced.  As the Supreme Court observed: "To make the language of a plan summary legally binding could well lead plan administrators to

sacrifice simplicity and comprehensibility in order to describe plan terms in the language of lawyers." *Id.* at 1877–78. As a result, a fiduciary may not bring a civil action under 29 U.S.C. § 1132(a)(3) to enforce a provision that is located exclusively within a summary plan description. *See US Airways, Inc. v. McCutchen*, 133 S. Ct. 1537, 1541 (2013) ("*McCutchen*") (explaining that "[section 1132(a)(3)] countenances only such relief as will enforce '*the terms of the plan*' or the statute . . . ." (emphasis in original)).

In this case, the sponsor of the API Plan "established and maintained" the Plan pursuant to the 2009 and 2011 New Case Documents. *See supra* pages 8–10. Indeed, when Mr. Nguyen was injured, there was no Summary Plan Description in effect at all. *See supra* page 12. The reimbursement and subrogation provision of the New Case Documents clearly precludes recovery from a Plan participant's insurance carrier. *See supra* pages 9–10; ROA.584; ROA.684. It provides that the Plan may recover from "the responsible appropriate party or their insurance carrier," but logically excludes both participants and their own insurance companies from the scope of "responsible appropriate parties." *See id.*

When *Humana Health drafted* the Summary Plan Description, it inaccurately described the reimbursement and subrogation provision of the New Case Documents. Unlike the New Case Document, the Summary Plan Description purports to permit the Plan to recover "any amount received from others," including

the covered person's own insurance policies.  *See supra* page 10; ROA.455.  This much more extensive reimbursement provision favors Humana Health, which is entitled to a percentage of any reimbursement it collects.  ROA.753 ¶ F3.1(a) ("[T]he administrative fee for providing Subrogation / Recovery Services is 30% of all amounts recovered under that Article.").  Moreover, to the extent that payments to the participant exceeded the threshold of API's stop loss policy with Humana Insurance, any amounts recovered from that person would go *first* to repay Humana Insurance.  *See* ROA.354–55.

After *Amara*, it is clear that the Summary Plan Description cannot change the terms of the Plan.  Indeed, one core animating principle of *Amara* is that the plan sponsor (who drafts the written instrument) sets the terms of the deal.  *See Amara*, 131 S. Ct. at 1877.  The plan administrator (who is responsible for the summary plan description) merely enforces that deal.  *See id.*  Although in *Amara* itself the same entity performed both roles, the Supreme Court cautioned: "[T]hat is not always the case. . . . [W]e have no reason to believe that the statute intends to mix the responsibilities by giving the administrator the power to set plan terms indirectly by including them in the summary plan descriptions."  *Id.* (citing *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 81–85 (1995)).

That is precisely what happened here: Humana Health tried to set more favorable reimbursement terms for itself and for its corporate relative by including them in the Summary Plan Description.

### B. The District Court Improperly Disregarded the Plain Terms of the API Plan and Imported Terms that Exist Only in the Summary Plan Description.

The District Court stated two alternative grounds for its holding that the API Plan has an equitable lien against Mr. Nguyen's underinsured motorist policy funds: (1) the plain terms of the API Plan unambiguously include a right to reimbursement from a participant's own insurers, or (2) if ambiguous, the terms of the API Plan should be construed as closely as possible to the terms in the Summary Plan Description. *See* ROA.962–64. According to the District Court, the 2009 and 2011 New Case Documents unambiguously allow recovery from Mr. Nguyen here because they permit recovery from a "'responsible appropriate party,' and giving the words of this term their plan and ordinary meaning, the court concludes that it is a broad term that unambiguously includes a Plan participant's own insurers." ROA.963. In the alternative, "the term should be given a meaning as close as possible to what is said in the 2009 and 2012 SPDs. *See Koehler*, 683 F.3d at 189." ROA.964.

The District Court's interpretation of the term "responsible appropriate party" in the 2009 and 2011 New Case Documents is simply wrong. First, the plain and

ordinary meaning of the term, if there is such a thing, surely does not include the Plan participant himself.  Again, that logical conclusion is supported by the same provision of the New Case Documents, which twice contemplates that the "covered person" collects money or monetary damages from "the responsible appropriate party."  ROA.604 (subrogation allows the Plan to "stand in the shoes of the covered person and collect money from the responsible appropriate party."); ROA.681 (". . . the covered person recovers monetary damages from the responsible appropriate party.").   Second, if the Plan participant cannot logically be "the responsible appropriate party," it follows that the Plan participant's insurance carrier is not "the responsible appropriate party's" carrier.  And if the "responsible appropriate party" itself could be an insurance carrier, the provision of the New Case Documents allowing recovery from "the responsible appropriate party or their insurance carrier" would have the nonsensical meaning "the insurance carrier or their insurance carrier."

The District Court's method for resolving the ambiguity that it concedes in the alternative violates both Fifth Circuit precedent and *Amara* and fails to give appropriate deference to the Plan Administrator.  As the District Court correctly stated, "*Cigna* did not disturb the Fifth Circuit's prior holdings that ambiguous plan language be given a meaning as close as possible to what is said in the plan summary."  ROA.960 (citing *Koehler*, 683 F.3d at 189).  But in those prior holdings,

this Court sought to vindicate plan participants' reasonable reliance on summary plan descriptions that were more favorable to them than the corresponding terms of the written instruments. *See, e.g.*, *Hansen*, 940 F.2d at 981–82; *Rhorer v. Raytheon Engineers & Constructors, Inc.*, 181 F.3d 634 (5th Cir. 1999). The Court repeatedly made clear that the ordinary contract law principle of *contra proferentum* requires that any ambiguities be resolved in favor of employees. *See, e.g.*, *Koehler*, 683 F.3d at 189; *Hansen*, 940 F.2d at 982; *Rhorer*, 181 F.3d at 640–41; *McCall v. Burlington Northern/Santa Fe Co.*, 237 F.3d 506, 512 (5th Cir. 2000).

In this case, the District Court turned this Court's prior holdings on their head by giving an arguably ambiguous term of the written API Plan instrument—the only document upon which Plan participants may fully rely after *Amara*—a construction that *hurts* API Plan participants. The District Court thus vitiated any expectations formed by Plan participants who examined the New Case Documents and reasonably understood their reimbursement obligations to be limited. *Cf. Koehler*, 683 F.2d at 188-89; *Hansen*, 940 F.2d at 982. *See also McCutchen*, 133 S. Ct. at 1549 (applying "[o]rdinary principles of contract interpretation" to ERISA reimbursement provision). In any event, *Amara* clearly prohibits such use of a non-binding summary plan description to adversely impact the rights of plan participants under the written instrument. *See Amara*, 131 S. Ct. at 1877; *id.* at 1883 (Scalia, J.,

concurring in the judgment) ("An SPD . . . cannot amend a plan unless the plan so provides.").

Finally, the District Court erred in holding that Ms. Manuel's interpretation of the Plan documents "constitutes an abuse of discretion because her interpretation does not represent a fair reading of the Plan documents, and creates an internal inconsistency within the Plan documents." ROA.965. For the reasons described above, Ms. Manuel's interpretation is not only a "fair reading of the Plan documents," it is the *only* logical reading of those documents. Nor does her interpretation create any "internal inconsistency within the Plan documents" because a summary plan description is not an enforceable plan document. *See, e.g.*, *Amara*, 131 S. Ct. at 1877.

*(cont'd on next page)*

# CONCLUSION

Mr. Nguyen respectfully requests that this Court reverse the order of the District Court granting summary judgment to Humana Health on its reimbursement claim and enter summary judgment in favor of Mr. Nguyen.[16]

Dated: August 4, 2014                         Respectfully submitted,

                                              s/ Peter K. Stris
                                              Peter K. Stris
                                              Dana Berkowitz
                                              Victor O'Connell
                                              STRIS & MAHER LLP
                                              19210 S. Vermont Ave. Bldg. E
                                              Gardena, CA 90248
                                              (424) 212-7090

                                              *Counsel for Defendant-Appellant*

---

[16] In the alternative, Mr. Nguyen requests that the Court reverse the District Court's grant of summary judgment to Humana Health on Mr. Nguyen's claim for breach of fiduciary duty. If Humana Health is a fiduciary, it breached its common law duty of loyalty by bringing this action to enrich itself at the expense of Plan participants. *See* ROA.258 ¶¶ 13, 15. Humana Health also breached the statutory duty of loyalty imposed by Section 404(a)(1)(A) of ERISA, which requires a fiduciary to discharge his duties "solely in the interest of the plan's participants and beneficiaries" and "for the exclusive purpose" of providing benefits and defraying reasonable expenses of administration. Finally, Humana Health violated the related prohibition against self-dealing in ERISA Section 406(b)(1) by exercising its discretion to bring suit in order to increase its fees under the Plan Management Agreement. *See* 29 C.F.R. § 2550.408b-2(e). In holding as a matter of law that bringing this action does not constitute a breach of fiduciary duty, the District Court entirely failed to consider Humana Health's duty of loyalty.

## CERTIFICATE OF SERVICE

I hereby certify that on August 4, 2014, an electronic copy of the foregoing Brief of Appellees was filed with the Clerk of Court for the United States Court of Appeals for the Fifth Circuit using the Court's CM/ECF system and was served electronically by the Notice of Docket Activity upon registered CM/ECF participants.

s/ Peter K. Stris
Peter K. Stris
STRIS & MAHER LLP
19210 S. Vermont Ave. Bldg. E
Gardena, CA 90248

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME
LIMITATION, TYPEFACE REQUIREMENTS,
AND TYPE-STYLE REQUIREMENTS**

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 9047 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2013 in Times New Roman 14-point font.

Dated: August 4, 2014

s/ Peter K. Stris
Peter K. Stris
STRIS & MAHER LLP
19210 S. Vermont Ave. Bldg. E
Gardena, CA 90248