No. 14-20358
_____

**UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**
_____

HUMANA HEALTH PLAN, INC,
                    *Plaintiff-Appellee*,

v.

PATRICK NGUYEN,
                    *Defendant-Appellant*.
_____

On Appeal from the United States District Court
for the Southern District of Texas, Houston Division
Civ. No. 4:13-cv-1793
_____

**REPLY BRIEF OF APPELLANT**
_____

Peter K. Stris
Dana Berkowitz
Victor O'Connell
STRIS & MAHER LLP
19210 S. Vermont Ave., Bldg. E
Gardena, CA 90248
Tel: (424) 212-7090
Fax: (424) 212-7001

*Counsel for Defendant-Appellant*

# TABLE OF CONTENTS

Table of Authorities ................................................................................. ii

Introduction ............................................................................................ 1

Standard of Review ................................................................................ 2

Argument ................................................................................................ 2

I.   Humana Health Is Not a Fiduciary of the API Plan ........................ 2

   A.   Humana Health Lacks Discretionary Authority in Carrying Out
        Subrogation And Reimbursement Activities ............................... 2

   B.   Mr. Nguyen's Alternative Claim Against Humana Health for
        Breach of Fiduciary Duty Is Not a Judicial Admission .............. 8

II.  The API Plan Does Not Have a Right to Reimbursement from a
     Participant's Underinsured Motorist Policy ..................................... 9

   A.   The 2011 New Case Document Is the Governing Plan
        Document ................................................................................... 9

   B.   The Plan Document Unambiguously Does Not Permit Recovery
        from a Participant's Underinsured Motorist Policy .................. 11

   C.   The Plan Document Controls over Inconsistent Terms in the
        Summary Plan Description ....................................................... 13

III. The API Plan Administrator's Interpretation Controls ................. 15

Conclusion ............................................................................................ 18

Certificate of Service ........................................................................... 19

Certificate of Compliance .................................................................... 20

# TABLE OF AUTHORITIES

## CASES

*Andrus v. Glover Const. Co.*,
446 U.S. 608 (1980)................................................................5

*Ashford v. U.S.*,
511 F.3d 501 (5th Cir. 2007)..................................................6

*Baxter v. C.A. Muer Corp.*,
941 F.2d 451 (6th Cir. 1991)..................................................3

*CIGNA Corp. v. Amara*,
131 S. Ct. 1866 (2011)..................................................9, 10, 13

*Continental Ins. Co. of New York v. Sherman*,
439 F.2d 1294 (5th Cir. 1971)................................................8

*Continental Casualty Co. v. U.S.*,
314 U.S. 527 (1942)................................................................5

*Donovan v. Mercer*,
747 F.2d 304 (5th Cir. 1984)..................................................2

*Firestone Tire & Rubber Co. v. Bruch*,
489 U.S. 101 (1989)................................................................15

*Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc.*,
484 U.S. 49 (1987)................................................................7

*Hansen v Continental Ins. Co.*,
940 F.2d 971 (5th Cir. 1991)..........................................11, 14

*Hawaiian Bitumuls & Paving v. U.S.*,
26 Cl. Ct. 1234 (Ct. Cl. 1992)................................................5

*Koehler v. Aetna Health Inc.*,
683 F.3d 182 (5th Cir. 2012)..........................................11, 14

*Kyle Rys. v. Pacific Admin. Serv. Inc.*,
990 F.2d 513 (9th Cir. 1993)..................................................3

*McCall v. Burlington Northern/Santa Fe Co.*,
237 F.3d 506 (5th Cir. 2000)................................................15

*Nance Int'l, Inc. v. OceanMaster Eng'g PTE, Ltd.*,
    No. 01-11-00664-CV, 2012 Tex. App. LEXIS 9239
    (Tex. App. Nov. 1, 2012) ........................................................................16

*Reich v. Lancaster*,
    55 F.3d 1034 (5th Cir. 1995) ............................................................2, 3, 4

*Rhorer v. Raytheon Engineers & Constructors, Inc.*,
    181 F.3d 634 (5th Cir. 1999) ...............................................................14

*Schott Motorcycle Supply, Inc. v. Am. Honda Motor Co., Inc.*,
    976 F.2d 58 (1st Cir. 1992) ....................................................................8

*Sunbeam-Oster Co. Grp. Ben. Plan v. Whitehurst*,
    102 F.3d 1368 (5th Cir. 1996) .............................................................14

*Sunday Riley Modern Skin Care, L.L.C. v. Maesa*,
    Civil Action No. H-12-1650, 2014 WL 722870
    (S.D. Tex. Feb. 20, 2014) .......................................................................8

*US Airways, Inc. v. McCutchen*,
    133 S. Ct. 1537 (2013) ..........................................................................14

*Wildbur v. ARCO Chemical Co.*,
    974 F.2d 631 (5th Cir. 1992) ...............................................................15


**STATUTES**

29 U.S.C. § 1022(a) ...................................................................................11

29 U.S.C. § 1132(a)(3) ..............................................................................14


**RULES AND REGULATION**

29 C.F.R. § 2509.75-8 .............................................................................3, 4

Fed. R. Civ. P. 8(d)(2) ................................................................................9

Fed. R. Civ. P. 8(d)(3) ................................................................................9

Fed. R. Civ. P. 56(c) ...................................................................................2

# INTRODUCTION

This case turns on two dispositive questions about the API Employee Benefit Plan (the "API Plan") – an employee welfare plan governed by the Employee Retirement and Income Security Act of 1974 ("ERISA"):

(1)   Is Plaintiff-Appellee Humana Health Plan, Inc. ("Humana Health") a fiduciary of the API Plan with standing to sue Defendant-Appellant Patrick Nguyen, an API Plan participant, under section 502(a)(3) of ERISA?

(2)   Does the API Plan permit reimbursement out of monies received from Mr. Nguyen's underinsured motorist policy?

The API Plan Administrator has made its position on both questions crystal clear. The API Plan (1) did *not* authorize Humana Health to initiate this lawsuit and, in any event, (2) does *not* permit the reimbursement sought from Mr. Nguyen.

With no apparent irony, Humana Health claims that "[t]his is a case of *simple* Plan Document interpretation," Red Br. 6, and then spends over 30 pages inviting this Court to substitute its interpretation of the API Plan for that of the API Plan Administrator. Red Br. 7-39. This Court should decline the invitation.

As the API Plan Administrator maintains, its plan does not authorize this lawsuit. *See infra* 2-9. As the API Plan Administrator maintains, its plan does not permit the reimbursement sought from Mr. Nguyen. *See infra* 9-15. The district court was required to defer to the API Plan Administrator unless its position is arbitrary and capricious. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101 (1989). It most certainly is not. *See infra* 15-18. Reversal is warranted.

1

## STANDARD OF REVIEW

As Mr. Nguyen explained in his opening brief, this Court reviews a grant of summary judgment *de novo*. AOB 16. Humana Health argues that this Court should review the district court's determination that Humana Health is a fiduciary of the API Plan for clear error instead. *See* Red Br. 2-3 (citing *Donovan v. Mercer*, 747 F.2d 304, 308 (5th Cir. 1984); *Reich v. Lancaster*, 55 F.3d 1034, 1047 (5th Cir. 1995)). Humana Health is confused. Clear error review applies when the district court has made a factual determination, not when the district court has held that there is no factual determination necessary. *Cf.* Fed. R. Civ. P. 56(c). Indeed, the cases that Humana Health cites concern appellate review following a full bench trial on the merits. *See Donovan*, 747 F.2d at 307-08; *Reich*, 55 F.3d at 1041 (describing "two-week bench trial"). *De novo* review applies at this stage.

## ARGUMENT

## I.     Humana Health Is Not a Fiduciary of the API Plan.

### A.     Humana Health Lacks Discretionary Authority in Carrying Out Subrogation And Reimbursement Activities.

Humana Health concedes, as it must, that it is not a fiduciary of the API Plan "except as may otherwise be expressly provided" in the Plan Management Agreement. Red Br. 9-10. It claims that the Plan Management Agreement expressly delegates Humana Health discretionary authority over benefits

determinations and subrogation/reimbursement services, such that it is a fiduciary with respect to those activities.[1] Red Br. 10. That interpretation of the Plan Management Agreement is simply untenable.

First, with respect to benefits determinations, Humana Health does not even attempt to distinguish its responsibilities from the "purely ministerial" tasks that do not confer fiduciary status. *Compare* Red Br. 10 (citing authority "make determinations . . . with respect to benefit payments under the Plan and to pay such benefits") *and* 29 C.F.R. § 2509.75-8 ("purely ministerial functions" include "[a]pplication of rules determining eligibility for participation of benefits," "[c]alculation of benefits," and "[p]rocessing of claims"); *Reich v. Lancaster*, 55 F.3d 1034, 1047 (5th Cir. 1995) ("A third-party administrator who merely performs ministerial duties or processes claims is not a fiduciary."); *Kyle Rys. v. Pacific Admin. Serv. Inc.*, 990 F.2d 513, 516 (9th Cir. 1993) (plan administrator whose functions were ministerial not a fiduciary); *Baxter v. C.A. Muer Corp.*, 941 F.2d 451, 455 (6th Cir. 1991) (plan administrator who processed and paid claims in accordance with plan not a fiduciary).

Humana Health's reliance on *Reich* is misplaced. *See* Red Br. 9. In *Reich*, this Court held that "persons who carry out perfunctory and ministerial, albeit

---

[1] Humana Health does not identify any provision in the Plan Management Agreement stating that Humana Health is a fiduciary. *Cf.* Red Br. 9-14.

important, duties and responsibilities for a plan" are not ERISA fiduciaries unless they "exercise discretionary authority and control that amounts to actual decision making power." 55 F.3d at 1049. The third-party administrator in that case provided consultation on tax and insurance issues, the terms of the plan, bid specifications, insurance company proposals, and funding methods, and was therefore a fiduciary. *Id.* at 1047. Like the third-party administrators in *Kyle Railways* and *Baxter*, Humana Health "merely performs ministerial duties [and] processes claims," and is therefore not a fiduciary. *Id.*

Second, with respect to subrogation and reimbursement, Humana Health's responsibilities under Article VII of the Plan Management Agreement plainly do not entail the exercise of discretion. *See* AOB 27 (explaining ministerial nature of Article VII tasks) (citing 29 C.F.R. § 2509.75-8). Article VII requires Humana Health to perform an enumerated list of concrete tasks relating to subrogation and reimbursement: request information, demand payment, notify participants, and file suit if necessary.[2] ROA.730 ¶ 7.5. Humana Health offers no meaningful response

---

[2] Humana Health's entire argument that it has "discretionary authority to enforce the Plan's Reimbursement/Subrogation provisions," Red Br. 12, is inconsistent with this detailed enumeration of Humana Health's specific duties, *see* ROA.730 ¶ 7.5. If the parties intended Humana Health to enjoy plenary authority for subrogation and reimbursement, they would have drafted the contract accordingly. *See, e.g.*, *Hawaiian Bitumuls & Paving v. U.S.*, 26 Cl. Ct. 1234, 1240 (Ct. Cl. 1992) (enumeration of specific tasks "tightly circumscribed plaintiff's freedom to choose the means by which the contract was to be completed").

to Mr. Nguyen's position that these responsibilities "are mechanical tasks to be performed *after discretion has been exercised*." AOB 27. As Mr. Nguyen has explained: "For example, while Article VII instructs Humana Health to 'present[] claims and demands for payments to parties determined to be liable,' it does not specify who determines which parties are liable and for how much." *Id.*

The Plan Management Agreement is clear that the API Plan Administrator makes the discretionary decisions with respect to subrogation and reimbursement, and Humana Health executes those decisions. Article VII itself requires Humana Health to "follow[] its normal procedures," expressly *forbidding* Humana Health to deviate from procedures that have been approved by the API Plan Administrator. ROA.730 ¶ 7.5; *see also* ROA.725 ¶ 2.1 ("In performing its obligations under this Agreement, [Humana Health] operates within a framework of Plan management policies and practices authorized or established by [API]."). Humana Health's argument that its authority to follow its *own* preexisting procedures gives it discretion, *see* Red Br. 11-12, fails as a matter of logic and established law. *See, e.g.*, *Ashford v. U.S.*, 511 F.3d 501, 504 (5th Cir. 2007) (act must involve judgment

---

Furthermore, under the related principle *expresio unius est exclusio alterius* (the inclusion of one is the exclusion of others), the parties' enumeration of specific tasks logically excludes tasks that are not enumerated, such as determining who are responsible appropriate parties. *See, e.g.*, *Andrus v. Glover Const. Co.*, 446 U.S. 608, 616-17 (1980) (citing *Continental Casualty Co. v. U.S.*, 314 U.S. 527, 533 (1942)).

and not be specifically prescribed by "federal statute, regulation or policy" for discretionary-function exception to apply).

Other provisions of the Plan Management Agreement confirm that the API Plan Administrator retains discretionary authority over all areas in which Humana Health acts. *See, e.g.*, ROA.725 ¶ 2.2 ("[Humana Health] does not have discretionary authority or responsibility in the administration of the Plan."); ROA.7.25 ¶ 2.5 ("[Humana Health] may act as an agent of [API] authorized to perform specific actions or conduct specified transactions only as provided in this Agreement."); ROA.726 ¶ 3.11 ("[API] shall not direct [Humana Health] to act or refrain from acting in any way which would violate any applicable law or regulation."). As Mr. Nguyen explained in his opening brief, the parties carefully drafted this language to prevent Humana Health from being deemed an ERISA fiduciary and thus to shield it from liability for breach of fiduciary duty. *See* AOB 24. Humana Health cannot have it both ways.

Unable to marshal support from the Plan Management Agreement, Humana Health complains that Mr. Nguyen has not "present[ed] any evidence, either to this Court or the District Court, indicating how API allegedly exercises its discretion with regard to Suborgation[sic]/Reimbursement under the Plan." Red Br. 13. Humana Health states the burden exactly backwards. As the party asserting standing under ERISA, it is *Humana Health's* responsibility to produce evidence

that Humana Health exercises discretion with regard to subrogation and reimbursement. *See, e.g.*, *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc.*, 484 U.S. 49, 65 (1987) (burden on plaintiff to make sufficient "allegations of fact" to establish statutory standing). It has failed to do so.

In any event, there *is* evidence in the record indicating how API exercises its discretion. API Plan Administrator Amy Manuel submitted an affidavit explaining that Humana Health "notif[ies] participants" only after API has decided to exercise its subrogation rights, ROA.580 ¶ 6, and it "fil[es] and prosecut[es] legal proceedings" only after API decides to pursue such litigation, ROA.581 ¶ 7. In this very case, the API Plan Administrator determined that Mr. Nguyen is not a "responsible appropriate party" from whom the Plan may seek reimbursement after exercising its discretionary authority to interpret the terms of the API Plan. ROA.257 ¶ 9; ROA.582 ¶ 10.

In short, there are no delegations of discretionary authority in the Plan Management Agreement. To the contrary, the Agreement clearly prohibits Humana Health from exercising discretion in performing *any* of its duties, including subrogation and reimbursement activities. And the only evidence in the record shows that the parties acted accordingly until Humana Health filed this suit.

**B.     Mr. Nguyen's Alternative Claim Against Humana Health for Breach of Fiduciary Duty Is Not a Judicial Admission.**

Humana Health claims that Mr. Nguyen's counterclaim for breach of fiduciary duty amounts to an admission that Humana Health is a fiduciary of the API Plan.  *See, e.g.*, Red Br. 7, 14-16.  That is a gross misrepresentation.  To begin, the Counterclaim states that "Humana *not* a fiduciary under the [P]lan." Counterclaim ¶ 14 (emphasis added).  Its theory of relief is that Humana Health caused the *API Plan Administrator* to breach *its* fiduciary duties to Mr. Nguyen. Counterclaim ¶ 15 ("Humana has acted in direct violation of the Plan's wishes, thereby causing its client, the API Employee Benefits Plan, to breach its fiduciary duty owed to Nguyen under ERISA.").  Mr. Nguyen's positions are consistent.

To the extent that Mr. Nguyen asserted any breach of fiduciary duty claim based on Humana Health's own fiduciary status, he clearly did so *in the alternative*.  *See* AOB 13; 38 n.16.  And it is settled law that "a pleading should not be construed as a judicial admission against an alternative or hypothetical pleading." *Sunday Riley Modern Skin Care, L.L.C. v. Maesa*, Civil Action No. H-12-1650, 2014 WL 722870, Slip Op. at *6 (S.D. Tex. Feb. 20, 2014) (quoting *Schott Motorcycle Supply, Inc. v. Am. Honda Motor Co., Inc.*, 976 F.2d 58, 61 (1st Cir. 1992)); *see also Continental Ins. Co. of New York v. Sherman*, 439 F.2d 1294, 1298 (5th Cir. 1971) ("[T]here is ample authority that one of two inconsistent pleas

cannot be used as evidence in the trial of the other."); Fed. R. Civ. P. 8(d)(2) (allowing alternative and hypothetical pleading); Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency.").

## II. The API Plan Does Not Have a Right to Reimbursement from a Participant's Underinsured Motorist Policy.

### A. The 2011 New Case Document Is the Governing Plan Document.

In *CIGNA Corp. v. Amara*, the Supreme Court held that the terms of a summary plan description are not "the terms of the plan" and cannot be enforced. 131 S. Ct. 1866, 1877 (2011) ("[S]ummary documents, important as they are, provide communication with beneficiaries *about* the plan, but [] their statements do not themselves constitute the *terms* of the plan . . . .") (emphasis added). The summary plan description at issue in this case ("SPD") states that it provides only "an overview of benefits" and is *not* the "official Plan Document." ROA.378. Ignoring both *Amara* and the plain language of the SPD, Humana Health argues that the SPD is the governing document for the API Plan. Red Br. 18-22. It is not.

The 2011 New Case Document makes clear that *it* is the API Plan. ROA.654 (requiring API to provide written notice "of any change to the New Case Document, at least 30 days before the effective date of the change" and entitling Humana Health to an additional fee "[i]f any changes to the New Case Document

require Humana to reprocess claims"). Indeed, as Humana Health itself acknowledges, the 2011 New Case Document was the *only* document setting forth the terms of the API Plan from the time of its execution until API approved the 2012 SPD on January 29, 2013. ROA.373 ¶¶ 2–4; Red Br. 20-21. Thus, if Humana Health were correct that the 2012 SPD is the API Plan (which it is not), then the API Plan was not "established and maintained pursuant to a written instrument" for years in clear violation of ERISA.[3] 29 U.S.C. § 1102.

Humana Health counters that "the controlling Plan Document must be the document that contains the terms actually received and understood by the beneficiaries of the Plan." Red Br. 25. But the Supreme Court *expressly rejected* that argument in *Amara*, explaining, "To make the language of a plan summary legally binding could well lead plan administrators to sacrifice simplicity and comprehensibility in order to describe plan terms in the language of lawyers." 131 S. Ct. at 1878-79. In other words, the legally controlling plan document often *cannot* be the simplified document actually received and understood by participants. Thus, like many governing plan documents, the 2011 New Case

---

[3] Humana Health's claim that API's eventual approval of the 2012 SPD made the SPD the governing Plan document ignores this implication. *Cf.* Red Br. 20-21. It is also inaccurate. As stated above, the 2012 SPD makes unmistakably clear that it provides only "an overview of [participants'] benefits. In the event of any discrepancy between this [Summary Plan Description] and the official Plan Document, the Plan Document shall govern." ROA.378.

Document was not distributed to Plan participants because it was not "written in a manner calculated to be understood by the average plan participant." 29 U.S.C. § 1022(a) (describing requirements for summary plan descriptions); *see also Koehler v. Aetna Health Inc.*, 683 F.3d 182, 189 (5th Cir. 2012) (citing *Hansen v Continental Ins. Co.*, 940 F.2d 971, 981 (5th Cir. 1991)).

### B. The Plan Document Unambiguously Does Not Permit Recovery from a Participant's Underinsured Motorist Policy.

Humana Health concedes that a Plan participant cannot be a "responsible appropriate party" within the meaning of the 2011 New Case Document. *See generally* Red Br. 31-32. It argues that the Plan may nevertheless recover from Mr. Nguyen because "the source of his UM/UIM benefits [*i.e.*, his underinsured motorist policy provider] is still the 'responsible appropriate party' within the meaning of the NCD reimbursement provisions." Red Br. 31.

That argument ignores the plain language of the 2011 New Case Document. The ordinary meaning of the term "responsible appropriate party" is tortfeasor and not insurance company. *See generally* AOB 9-10. That commonsense reading fits with the specific reimbursement language of the 2011 New Case Document: "Reimbursement allows the Plan . . . to recover the money the Plan paid on behalf of the covered person, when benefits are paid and the covered person *recovers monetary damages* from the responsible appropriate party." ROA.681 (emphasis

added).  A participant recovers "damages" from tortfeasors, not insurance companies.  AOB 10.  Further support for this reading comes from the subrogation provision, which states that the Plan has a "contractual/equitable right to request money back from the responsible appropriate party *or their insurance carrier*." ROA.681.  The 2011 New Case Document clearly does not contemplate that the "responsible appropriate party" itself can be an insurance carrier.[4]  *See* AOB 35.

In any event, Humana Health seeks to recover from Mr. Nguyen, not his underinsured motorist policy provider.  Humana Health acknowledges that its position entitles the Plan "to reimbursement from the entirety of Nguyen's recovery, *regardless of its source*."  Red Br. 32 (emphasis added).  But that position, which does not require Mr. Nguyen to have recovered from a "responsible appropriate party" at all, makes Mr. Nguyen the "responsible appropriate party" himself.  But as Humana Health concedes, a Plan participant cannot logically be a "responsible appropriate party."  *See* Red Br. 31-32; *see also* AOB 10, 35.

---

[4] Humana Health's argument that "[t]o draw the line at the exclusion of UM/UIM proceeds would be arbitrary" is a red herring.  Red Br. 32.  Mr. Nguyen does not advocate any such line.  As his opening brief makes clear, his position is that the Plan has no reimbursement right from either a Plan participant or a participant's own insurance carrier.  *See* AOB 34-35.

### C. The Plan Document Controls over Inconsistent Terms in the Summary Plan Description.

Finally, Humana Health urges this Court to enforce the terms of the 2012 SPD *even though* they are not the terms of the governing Plan document. Humana Health argues that the subrogation and reimbursement provision of the SPD are consistent with the corresponding terms of the 2011 New Case Document, in which API "elected the strongest subrogation language." Red Br. 18, 19-20. But that argument proves too much: if the two possibilities in the 2011 New Case Document were "no subrogation" and "subrogation/reimbursement from tortfeasors only," Humana Health could not credibly seek reimbursement from Mr. Nguyen's underinsured motorist policy based on API's election of the "stronger" language. Humana Health's next argument, that API "approved" the language of the SPD, *see* Red Br. 23, is similarly unpersuasive because there is no reason to believe that the sponsor intended to change the terms of the Plan merely by signing off on an overdue, non-binding 80-page summary of the Plan drafted by Humana Health. *See Amara*, 131 S. Ct. at 1877 ("[W]e have no reason to believe that the statute intends to . . . [give] the administrator the power to set plan terms indirectly by including them in the summary plan descriptions.").

Unable to reconcile the terms of the SPD and the 2011 New Case Document, Humana Health maintains that Fifth Circuit precedents require this Court to

enforce the former over the latter.  *See* Red Br. 23-25.  Not surprisingly, Humana Health relies exclusively on Fifth Circuit case law that predates *Amara* and *US Airways, Inc. v. McCutchen*, 133 S. Ct. 1537 (2013), in support of its claim that an SPD controls in the event of a conflict with the Plan document.  *See* Red Br. 23-25 (describing *Hansen*, 940 F.2d 971); *Sunbeam-Oster Co. Grp. Ben. Plan v. Whitehurst*, 102 F.3d 1368 (5th Cir. 1996)).  In *McCutchen*, the Supreme Court held that "[29 U.S.C. § 1132(a)(3)] countenances only such relief as will enforce '*the terms of the plan*' or the statute."  133 S. Ct. at 1541 (emphasis in original). And as noted above, *Amara* clarifies that the terms of an SPD are not "the terms of the plan."  131 S. Ct. at 1877.  Together, *Amara* and *McCutchen* stand for the undeniable proposition that the terms of an SPD are not enforceable under section 1132(a)(3).  Indeed, in *Kohler*, this Court acknowledged that *Amara* "changes our case law to the extent that the plan text [and not the summary] ultimately controls the administrator's obligations . . . ."  683 F.3d at 189.

Humana Health's attempt to elevate the unenforceable SPD over the terms of the Plan document must fail.  Not only does it disregard the express holdings of *Amara*, *McCutchen*, and *Kohler*, but it is inconsistent with the policy underlying this Court's earlier precedents: to resolve ambiguities in favor of *employees* and against plans.  *See, e.g.*, *Koehler*, 683 F.3d at 189; *Hansen*, 940 F.2d at 982; *Rhorer v. Raytheon Engineers & Constructors, Inc.*, 181 F.3d 634, 640-41 (5th Cir. 1999);

*McCall v. Burlington Northern/Santa Fe Co.*, 237 F.3d 506, 512 (5th Cir. 2000). Notwithstanding Humana Health's protests, it is clear that the API Plan Administrator interpreted the Plan in a way that favors participants here. *Cf.* Red Br.. 22 ("API's interpretations with respect to the Plan's reimbursement right against Nguyen are detrimental to other Plan beneficiaries and are not consistent or impartial."). Of course, there are cost savings to an ERISA plan *whenever* it withholds benefits or collects reimbursement, but courts routinely recognize those determinations as "adverse" to plan participants.

## III. The API Plan Administrator's Interpretation Controls.

It is beyond peradventure that when an ERISA plan gives an administrator discretionary authority to construe the terms of a plan, the administrator's interpretations are entitled to deference. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111 (1989). And "there is no dispute [in this case] that the Plan Administrator was vested with discretionary authority to interpret the Plan." ROA.948; *see also* ROA.725 ¶ 2.3. Under these circumstances, "the decision of the administrator must stand unless there is an abuse of discretion" and not merely an incorrect result. *Sunbeam-Oster*, 102 F.3d at 1373; *see also Wildbur v. ARCO Chemical Co.*, 974 F.2d 631, 637 (5th Cir. 1992).

Humana Health urges this Court (as it did the district court) not to defer to the API Plan Administrator's interpretations on the grounds that they are incorrect.

Red Br. 35 ("Amy Manuel's determinations . . . are legally incorrect and should be disregarded."); Red Br. 39 ("API's determination . . . is legally incorrect and should be disregarded.").  Humana's legal arguments about the terms of the Plan, including the standard of review it invokes, are wrong for the reasons described above.  Some of its claims about deference nevertheless warrant further discussion because they shed light on what this case is really about.  For example:

Humana Health characterizes the affidavit of API Plan Administrator Amy Manuel as "[o]ne individual's personal interpretation of the meaning of the terms of a contract" and argues that it is therefore "'not evidence of the meaning of the contract.'"  Red Br. 34 (quoting *Nance Int'l, Inc. v. OceanMaster Eng'g PTE, Ltd.*, No. 01-11-00664-CV, 2012 Tex. App. LEXIS 9239, at *10 (Tex. App. Nov. 1, 2012)).  Nothing could be further from the truth.  As explained above, the Plan Administrator's reading is *presumed to bind this Court*.  To be clear: Humana Health seeks to divert attention from the fact that this is an ERISA dispute by citing contrary principles that apply only in ordinary breach of contract cases.  *Cf. Nance*, No. 01-11-00664-CV, 2012 Tex. App. LEXIS 9239.

At its core, Humana Health's argument boils down to the indefensible claim that Mr. Nguyen enjoys *fewer* rights under ERISA because he happens to be related to a senior executive at API. Humana Health contends:

> Throughout this litigation, Nguyen has maintained a close relationship with API and has not denied that Nguyen's father is the chief executive of API, the Plan's sponsor and Plan Administrator. Nguyen has not disputed his familial connection to API.

Red Br. 34. Similarly:

> API's "wishes" were formed under the influence of the conflict of interest of Nguyen's familial connection, and Nguyen argues that these "wishes" trump the authority expressly delegated to Humana by the PMA.

Red Br. 37. And finally:

> Nguyen is not insulated from the Plan's requirements simply because of his connection to an executive officer of API. The Plan has a responsibility to all beneficiaries—not just the son of a Plan Sponsor's chief executive—to properly maintain and administer the Plan's assets.

Red Br. 38. Humana Health tacitly acknowledges that if Mr. Nguyen were not "connected," there would be no reason to question the Plan Administrator's decisions here. But its unsupported, *ad hominem* attacks on API and Ms. Manuel are not legitimate reasons to second-guess API's actions. The administrator of an ERISA-governed plan does not have less discretionary authority to act in the interests of some plan participants than others.

Amazingly, and tellingly, Humana Health implies that Mr. Nguyen's "alliance" with the API Plan Administrator in this litigation weakens his position. *See, e.g.*, Red Br. 34 ("Throughout this litigation, Nguyen has maintained a close relationship with API . . . ."); Red Br. 38 ("Nguyen and API have worked closely in this litigation . . . ."). But the fact that the Plan agrees with Mr. Nguyen is this case does not strengthen the position of Humana Health. To the contrary, it renders the position of Humana Health *legally indefensible*. Humana Health has manufactured a dispute about the terms of the API Plan its own profit, yet it has the audacity to complain to this Court about Ms. Manuel's "self-serving" affidavit. Red Br. 35.

## CONCLUSION

Mr. Nguyen asks this Court to reverse the order granting summary judgment to Humana Health and enter summary judgment in favor of Mr. Nguyen.[5]

September 25, 2014

Respectfully submitted,

s/ Peter K. Stris
Peter K. Stris
Dana Berkowitz
Victor O'Connell
STRIS & MAHER LLP
19210 S. Vermont Ave. Bldg. E
Gardena, CA 90248
(424) 212-7090

*Counsel for Defendant-Appellant*

---

[5] In the alternative, Mr. Nguyen requests reversal of summary judgment on his breach of fiduciary duty claim. *See* AOB 38 n.16.

**CERTIFICATE OF SERVICE**

I hereby certify that on September 24, 2014, an electronic copy of the foregoing Reply Brief of Appellant was filed with the Clerk of Court for the United States Court of Appeals for the Fifth Circuit using the Court's CM/ECF system and was served electronically by the Notice of Docket Activity upon registered CM/ECF participants.

September 25, 2014

s/ Peter K. Stris
Peter K. Stris
STRIS & MAHER LLP
19210 S. Vermont Ave. Bldg. E
Gardena, CA 90248

**CERTIFICATE OF COMPLIANCE**

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 4,632 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2013 in Times New Roman 14-point font.

September 25, 2014

s/ Peter K. Stris
Peter K. Stris
STRIS & MAHER LLP
19210 S. Vermont Ave. Bldg. E
Gardena, CA 90248